THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

| | |
|---|---|
| JAMES THOMAS FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. |
| ) | |
| YAHOO INC., ) | |
| ) | |
| Defendant. ) | **JURY DEMAND** |

**COMPLAINT AT LAW**

Plaintiff, James Thomas Foster ("Plaintiff" or "Foster"), by his attorneys, JAMES KELLY LAW FIRM, PC, with his lead counsel, James M. Kelly, and for his Complaint against defendant Yahoo Inc. ("Defendant" or "Yahoo"), states:

### I.   PRELIMINARY STATEMENT

1. This is an action for an award of compensatory damages, punitive damages, and other relief, as appropriate, on behalf of Plaintiff, who has been harmed by Defendant's defamation by implication by implying that Plaintiff caused or was involved in the death of Joseph Ciancola.

### II.   JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship) as Plaintiff is a citizen of Florida, Defendant is a citizen of New York

1

(principal place of business) and Delaware (state of incorporation) and the amount in controversy exceeds $75,000.00.

3. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 USC 1391(a)(2), as the Plaintiff is a resident of the Middle District of Florida, and the defamatory statements were published in the Middle District of Florida.

4. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to maintain this action as on June 24, 2025 Plaintiff notified Defendant of the defamatory statements.

### III.   PARTIES

5. Plaintiff is a resident of Charlotte County, Florida.

6. Defendant has its principal place of business in New York, New York and is incorporated in the State of Delaware.

7. Defendant owns and operates a website (AOL.com) that publishes, among other things, news and entertainment content and is circulated digitally and has a national audience.

8. AOL.com is circulated in the Middle District of Florida.

## IV. FACTS

9. Foster served for 20 years in various baseball coaching positions, including head baseball coach at the University of Rhode Island for 8 years, associate head baseball coach at Boston College from 2015 to 2016, and from 2016 to 2022 as the head baseball coach at the United States Military Academy at West Point immediately before being hired as the head baseball coach at Northwestern University.

10. Foster was a very successful baseball coach. As head baseball coach at the University of Rhode Island he led the team to two Atlantic 10 Conference championships. As head coach at West Point before accepting the head coach job at Northwestern, Foster led the West Point baseball team to three Patriot League championships.

11. Foster was hired to be the head baseball coach at Northwestern University starting on July 5, 2022.

12. In addition to the salary to be paid to Foster pursuant to the contract for employment, Foster was allowed to conduct baseball camps or clinics at Northwestern University.

13. Foster was allowed to keep the fees for these camps or clinics but was required to reimburse the University for any services provided by the University.

14. In an article published by Defendant on AOL.com on July 14th, 2023 ("the Article"), the following statements were made about Foster:

> Other times they claim, he [Foster] discouraged players from seeing the team trainer, or pressured injured players to speed up their timeline for returning from injury in fear that they would lose their spot on the team.
>
> ***
>
> In 2011 during Foster's time at Rhode Island, 20-year-old pitcher Joseph Ciancola collapsed while running during an outdoor strength and conditioning session with the team and died three days later at a hospital. Ciancola's family sued the university, eventually settling for 1.45 million, according to The Providence Journal."

A true and correct copy of the Article is attached hereto as Exhibit 1 and incorporated herein.

15. Foster was not involved in any way in the workout that Joseph Ciancola participated in prior to his death. Foster also did not discourage players at Northwestern University from seeing the team trainer or pressure injured players to return prematurely.

16. Foster was not named as a defendant in the lawsuit that was filed against the University of Rhode Island as a result of Joseph Ciancola's death.

17. The statements concerning Foster were circulated throughout the Middle District of Florida.

4

## CAUSE OF ACTION

## (DEFAMATION BY IMPLICATION)

18. Foster realleges and incorporates by reference paragraphs 1 through 17 as if fully set forth herein.

19. Foster was placed in a false light before the public in that the statements in the Article falsely imply, by juxtaposing the false statements that Foster discouraged Northwestern baseball players from seeing the trainer and pressured Northwestern baseball players to return early from injury with the statements that a member of the University of Rhode Island baseball team, Joseph Ciancola, died of a heat stroke after a team workout while Foster was the team's head coach, that Foster was responsible for or involved in the death of Ciancola.

20. The false implication that Foster was responsible for or involved in the death of a student athlete is highly offensive to a reasonable person.

21. Foster has suffered actual damages in that:

a. He has been unable to obtain a similar coaching position since his tenure as the head baseball coach at Northwestern University ended;

b. He has had to refund all monies paid to him for future baseball camps conducted by him at Northwestern University and has lost future income from such camps;

    c.    His professional reputation has been damaged affecting his future earnings potential;

    d.    He has suffered emotional distress and mental anguish caused by the defamatory statements;

    e.    He has suffered loss of enjoyment of life.

22.    Defendant acted with malice in that Defendant knew that the implication that Foster was responsible for or involved in the death of Joseph Ciancola was false or acted with reckless disregard for whether such statements were true or false in that any type of inquiry at all would have indicated that Foster had nothing to do with the workout that preceded Joseph Ciancola's death.

23.    Foster is entitled to punitive damages to punish Defendant and deter others from similar conduct as Defendant has engaged in malicious conduct.

WHEREFORE, Foster respectfully prays that judgment be entered in his favor and against Yahoo as follows:

A. For an award of Foster's actual damages in an amount appropriate to compensate Foster for his damages;

B. For an award of punitive damages to punish Yahoo for its willful, wanton and knowing conduct;

C. For Foster's costs of suit;

D. For such other or further relief this Court deems just and equitable.

JAMES FOSTER, Plaintiff

By: _____
      James M. Kelly

James M. Kelly, IL Bar No. 6238519
Jay L. Cohen, NY Bar No. 1793074
JAMES KELLY LAW FIRM, PC
7817 N. Knoxville Avenue
Peoria, IL 61614
T:  (309) 679-0900
F:  (309) 679-0919
E:  jim@jameskellylawfirm.com
*Attorneys for Plaintiff*